**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| JAMES HENEGHAN and GREGORY PERKINS, individually and on behalf of all others similarly situated,<br><br>        *Plaintiffs*,<br><br>    *v.*<br><br>SLIMWARE UTILITIES, INC., a Mississippi corporation,<br><br>        *Defendant*. | Case No. 1:13-cv-04056 |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs James Heneghan ("Heneghan") and Gregory Perkins ("Perkins") (collectively, "Plaintiffs") bring this Class Action Complaint ("Complaint") against Defendant SlimWare Utilities, Inc. ("Defendant" or "SlimWare") to obtain redress for, and put an end to, Defendant's deceptive marketing and sale of certain of its software products. Plaintiffs, for their Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

### NATURE OF THE ACTION

1.      SlimWare develops software that it claims will increase the speed, performance and stability of a consumer's personal computer ("PC"), protect against privacy risks, remove harmful errors, and improve Internet performance. Unfortunately for consumers, however, SlimWare's methods of inducing consumers to purchase and continue to use its software, as well as the product itself, are utterly fraudulent.

2.     Through a common deceptive scheme, SlimWare uniformly deceives consumers into purchasing the software product at issue in this lawsuit—"FixCleaner."

3.     First, SlimWare represents to consumers that FixCleaner is capable of identifying, reporting, and repairing a wide range of computer errors and privacy threats. SlimWare also promises that FixCleaner will increase system startup speeds and otherwise optimize a user's PC.

4.     To demonstrate FixCleaner's purported value, consumers are encouraged to download the software to perform a diagnostic scan, which SlimWare claims will detect and fix harmful computer errors. After the initial scan, FixCleaner reports in alarmist fashion that thousands of harmful errors and other threats exist on the consumer's PC (when, in reality, the detected "errors" do not actually cause appreciable harm to a computer's operations). The user is then offered the ability to "repair" the PC by removing the errors reported by FixCleaner.

5.     Despite the foregoing, and contrary to SlimWare's marketing and in-software representations, neither the free trial nor the full registered versions[1] of FixCleaner *perform any credible diagnostic testing* of a user's PC, nor do they provide the other supposed benefits represented by SlimWare. Instead, SlimWare intentionally designed FixCleaner to invariably report that a user's PC needs repair and is afflicted with harmful errors, privacy risks, and other problems—regardless of the computer's actual condition.

---

[1]     Users may (i) download and use FixCleaner for thirty (30) days, after which time the trial period expires and the full registered version must be purchased for continued use of the software, (ii) download a free or "slim" version that purports to "fix" only a limited number of issues, the remainder of which will only be fixed through purchase of the full version, or (iii) purchase the full registered version outright with a sixty (60) day money back guarantee. Regardless of the method by which a consumer ultimately purchases FixCleaner, they are unfortunately led to believe that the software is functioning as advertised—*i.e.*, effectively detecting and removing errors that cause system-wide problems—when in fact, as shown below, that's simply not the case.

6.     Both the full registered version and free trial versions of FixCleaner utilize the same methods to detect and report "errors." Importantly, the full registered version of FixCleaner is only offered on a subscription basis. As such, the average consumer (unaware of the deceptive nature of the software) is convinced that the software is detecting, reporting, and repairing actual errors harming their PC's performance. Thus, because FixCleaner was designed to invariably "detect" harmful errors, the consumer is fraudulently induced into purchasing and continuing to use the software.

7.     SlimWare holds itself out as a reputable developer of software designed to protect consumers' computers. Because average consumers lack the requisite technical expertise to understand the underlying operations of SlimWare's software, they trust SlimWare to convey truthful information, and to honestly and accurately identify and remove harmful errors from their computers. SlimWare betrayed that trust, and as a result thousands of consumers have been, and continue to be, tricked into paying for software they do not need. In light of SlimWare's willful conduct, Plaintiffs seek punitive damages.

## PARTIES

8.     Plaintiff James Heneghan is a natural person and citizen of the State of Illinois.

9.     Plaintiff Gregory Perkins is a natural person and citizen of the State of Louisiana.

10.     Defendant SlimWare Utilities, Inc. is a corporation incorporated in and existing under the laws of the State of Mississippi, with its headquarters and principal place of business located at 2953 Bieneille Boulevard, Suite 566, Ocean Springs, Mississippi 39564. SlimWare conducts business throughout the United States, the State of Illinois, and this District.

3

## JURISDICTION AND VENUE

11.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the Class is a citizen of a state different than SlimWare, (ii) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (iii) none of the exceptions under that subsection apply to this action.

12.     This Court has personal jurisdiction over SlimWare because it conducts business in this District and the unlawful conduct alleged in the Complaint occurred in, was directed to, and/or emanated from this District.

13.     Venue is proper in this District under 28 U.S.C. § 1391(b) because the injuries of which Plaintiff Heneghan complains were directed to, and/or emanated from this District. Venue is additionally proper because SlimWare transacts significant business in this District, including soliciting consumer business and entering into consumer and business contracts.

## FACTUAL BACKGROUND

### I.     A Brief Overview of SlimWare Utilities, Inc.

14.     SlimWare purports to be dedicated to bringing "powerful PC software to the every-day computer user."[2] To that end, SlimWare claims that its software "products organize and sync data on a PC, clean and fix system errors, install updates, repair broken connections and provide overall maintenance that keep all of a consumer's personal computing products . . . running faster, smoother and more effectively."[3] One such product is FixCleaner.

15.     SlimWare claims that FixCleaner, now in its second version, has become the company's "flagship" product because it is a "singl[e] application that brings together all of the

---

[2]     About Us, http://www.fixcleaner.com/aboutus.php (last visited May 31, 2013).

[3]     Company, https://www.slimwareutilities.com/company.php (last visited May 31, 2013).

utilities needed to stabilize an average computer system, protect user privacy, and eliminate errors."[4]

## II.    SlimWare Uses Scare Tactics to Trick Consumers Into Purchasing FixCleaner.

16.    SlimWare promotes FixCleaner through a variety of online advertisements and on its websites as software that is capable of increasing computer speed and performance, removing harmful computer errors, and protecting users' privacy. *See* Figure 1 (showing a screenshot of an advertisement for SlimWare's FixCleaner software).



(Figure 1.)

17.    For example, if a consumer searches the World Wide Web for software to enhance their computer's performance, he or she will likely encounter SlimWare's advertisements for FixCleaner, which include the following representations:

- "FixCleaner is an advanced computer utility designed to boost the performance of home PCs";

- "Why use FixCleaner ? [*sic*] Using FixCleaner helps you to halt the loss of system performance that causes computer slowdown.";

- "Simple technology to Fix and Clean Windows";

- "PC Maintenance Made Easy";

- "FixCleaner can help solve the most frustrating PC problems, and using it is as easy as clicking a mouse."; and

---

[4]    About Us, http://www.fixcleaner.com/aboutus.php (last visited May 31, 2013).

- "PC Maintenance with One-Click."

These and other similar representations are displayed in the form of "banner" advertisements and sponsored hyperlinks displayed when a user conducts an Internet search for software to fix computer programs, as well as on SlimWare's websites located at www.slimwareutilities.com and www.fixcleaner.com.

18.     When a consumer clicks on a hyperlink in one of these advertisements they are directed to one of SlimWare's websites where SlimWare presents the consumer with representations designed to convince them that not using software like FixCleaner can lead to serious computer problems. For instance, SlimWare alerts the consumer that:

- "Over time, computer systems develop clutter. This can cause systematic PC slowdown and program instability.";

- "Just like a car, a PC needs consistent upkeep to keep its performance running smoothly."; and

- "Anyone who uses a Windows based PC over time can face problems such as slow PC speed, error messages, slow [Internet] browsing speed, slow startup, slow shutting down and other issues."

19.     SlimWare also presents consumers with a list of commonly occurring PC problems and an explanation of how FixCleaner is designed to detect and fix the errors that cause these problems. For example, SlimWare's websites read in part:

- "Has your computer slowed down? Does it Crash or Freeze up at the worst times? Does it post confusing Error Messages? Do you suffer 'Hard drive is full' Errors? Get help with these problems fast with FixCleaner.";

- "FixCleaner uses our latest advancements in smart scanning to find invalid entries in Windows, junk files, unneeded startup entries and various vital updates. Issues here are often the cause of performance problems that can lead to system slowdown.";

- "The common issues that people see on a computer have varied causes. FixCleaner was designed to be a multi-form tool. It combines a set of

tested, specialized utilities to comprehensively fix issues that cause a lack of performance, slow boot-up speeds and other frustrating problems."; and

- "Using FixCleaner helps you to halt the loss of system performance that causes computer slowdown."

20.     Regardless of where the consumer encounters these statements, SlimWare strongly encourages the consumer to download FixCleaner to protect, repair and optimize their computers, thus triggering the initial phase of SlimWare's deceptive scheme: misrepresenting FixCleaner's utility.

**A.     SlimWare misrepresents the utility of FixCleaner.**

21.     Through its websites, SlimWare claims that its software will scan a user's computer to detect a variety of harmful computer errors and other issues that are "often the cause of performance problems that can lead to system slowdown, bootup errors, shutdown errors, and those frustrating crashes." SlimWare then claims that its software will "help" with these problems and doing so is "as easy as clicking a mouse."

22.     More specifically, SlimWare expressly warrants through its website that FixCleaner was designed to perform the following tasks:

- "Eliminate program delays to increase PC startup speed";

- "Wipe away junk files, redundant links, invalid program shortcuts and outdated help files.";

- "Repair common stability errors automatically with just one click of the mouse.";

- "Make your computer boot faster by actively controlling programs that launch on startup."; and

- "Optimize your system with easy push-button controls. Manage startup programs and eliminate performance issues with ease."

23.     But these representations do not accurately reflect FixCleaner's true capabilities. The truth is that, at its core, FixCleaner performs three primary functions: it's a registry cleaner,[5] it adjusts registry configuration settings,[6] and it removes superfluous 'temporary' files from a user's hard drive. From a technical standpoint, none of these operations come close to squaring with SlimWare's representations about FixCleaner's functionality. Specifically, none of these functions will prevent typical application or system crashes, nor will they resolve common hardware problems, noticeably optimize memory, or appreciably improve the speed of the system's operations.

24.     After consumers—most of whom are searching for software to fix seriously malfunctioning computers—are informed that FixCleaner is capable of performing the tasks identified above, SlimWare moves to the second phase of its deceptive scheme: convincing consumers that their computers are afflicted by errors causing the problems that SlimWare claims FixCleaner was designed to fix.

**B.      FixCleaner falsely informs consumers that their computers need repair.**

25.     Through its websites, SlimWare encourages consumers to download a trial version of FixCleaner to perform a free scan that detects issues that the product is supposedly designed to identify and fix. *See* Figures 2–4 (showing screenshots of advertisements displayed on SlimWare's websites for the free trial versions of FixCleaner).

---

[5]     "Registry cleaner" software is a type of utility program designed to remove unwanted or redundant items from the Microsoft Windows operating system registry. The "registry" is a database of configuration settings that helps facilitate the functioning of computer applications.

[6]     In addition to performing tasks as a registry cleaner, FixCleaner also adjusts configuration settings associated with the registry.



(Figure 2.)



(Figure 3.)



(Figure 4.)

26.     The problem with SlimWare's approach is that, through these marketing

materials, consumers are led to believe that FixCleaner's free scan will detect the sort of

computer errors causing the problems that SlimWare claims FixCleaner will fix (*i.e.*, problems

causing error messages, system delays, slow startup times, and privacy threats). But, as

introduced above, and explained in detail below, that is simply not true.

27.     In reality, SlimWare deceptively designed FixCleaner—both the free trial versions and the full registered version—to convince users that the purchase and continued use of the software is necessary to protect and optimize their computers.

**III.     SlimWare Designed Its "Free Trial" Versions of FixCleaner to Invariably Report Harmful Errors to Induce Users to Purchase and Continue to Use the Full Registered Version.**

28.     After a consumer downloads and installs FixCleaner, the software immediately warns him or her—in red bolded typeface—that their "PC health is: Unknown" and recommends that they "run a 1-Click Scan." *See* Figure 5 (showing a screenshot of FixCleaner's initial diagnostic scan user interface).



(Figure 5.)

29.     Upon completion of the scan, FixCleaner displays a warning to the user in an alarmist fashion—using ominous yellow typeface and a graphical depiction of a gauge with a needle pointing "in the red/orange," which purportedly represents the health status of the computer—that the computer's overall status is "LOW" and needs to be repaired. *See* Figure 6 (showing a screenshot of FixCleaner's error reporting interface). In addition to the graphical

depictions of the computer's overall status, FixCleaner displays an itemized list of errors and problems purportedly identified by the software, accompanied by a warning that *thousands* of serious problems exist that need to be "fixed." *See id.*



(Figure 6.)

30.     A separate screen displays the total number of items detected by FixCleaner and encourages the user not to "panic" by assuring them that the use of the software "can easily & safely fix all items." *See* Figure 7 (showing a screenshot of FixCleaner's error reporting interface).



(Figure 7.)

31.     Contrary to the software's representations, however, neither the free trial versions nor full registered version of FixCleaner actually perform any meaningful evaluation of the user's computer system. Nor can FixCleaner possibly perform the beneficial operations warranted by SlimWare through its websites, advertising, and in-software display screens.

32.     Through their attorneys, Plaintiffs have engaged a computer forensics expert to examine the FixCleaner software. The results of this investigation confirm that the free trial versions, as well as the full registered version of FixCleaner, are designed to *always* report that a user's computer is in need of repair. Ostensibly, these representations scare the user into believing that the computer is damaged, or at risk, and that the purchase and continued use of FixCleaner is necessary to "fix" these problems.

33.     For example, Figure 7 above shows the results of an initial diagnostic scan conducted by Plaintiffs' expert using FixCleaner *on a brand new computer*, in a pristine virtual

computing environment. The scan's results claim that "8862 Items" have been detected on the user's computer and require attention, even though the test computer had never been used.

34.     The expert's research also shows that FixCleaner was designed to mischaracterize the severity of errors to shock consumers into believing their computers are damaged. For example, in Figure 8 below, the expert planted two *fake*, innocuous files (for example, the "HKEY_LOCAL_MACHINE\SOFTWARE\Classes\.fake" file displayed in the red box shown in the Figure) that cannot damage a computer's operation. Tellingly, Figure 8 shows FixCleaner detecting these files as errors and reporting that they are causing the computer's condition to be "LOW"—a flagrant mischaracterization of the impact that two fake, non-damage causing files have on a computer by any stretch of the imagination.



(Figure 8.)

35. The take-away from these findings is that FixCleaner uses arbitrary metrics to assess the severity of "errors" detected by the software and their impact on an individual user's system. The net effect of this design is that, regardless of the condition of the user's computer system, it will *always* appear to the user that the software is properly functioning as an error-detection and removal utility.

36. As a result, users of the free trial versions of FixCleaner are deceived into believing that their computers are damaged, and that the purchase of the full registered version is necessary to ensure the integrity of their computer.

37. Indeed, even after purchasing the full registered version of the FixCleaner, the software (by intentional design) continues to falsely detect and report errors. These techniques defraud users into believing that the continued use of the software is necessary to repair so-called problems on their computers, and eventually, to induce them to upgrade or re-purchase the software after it expires.

38. Put simply, users are lured into a false sense of insecurity by FixCleaner's scan results, because they believe that the non-threatening errors detected correspond with the problems that SlimWare claims the software was designed to fix. But as explained herein that's not the case, as SlimWare's diagnostic methods are wholly arbitrary.

39. Through the deceptive scheme described above, SlimWare has profited, and continues to profit, by defrauding consumers into believing that their computers are damaged and/or at risk, and that the purchase—typically $34.95 per year—and continued use of FixCleaner is necessary to "fix" these problems. Because the software fails to actually repair the problems advertised by SlimWare and arbitrarily mischaracterizes the condition of the computer, SlimWare does not deliver on its promises to its users.

IV.     **SlimWare Continues Its Fraudulent Conduct, in Disregard of the Changing Utility Software Industry.**

40.     Unfortunately for consumers, SlimWare is not alone in its use of the sorts of fraudulent programmatic design and marketing practices at issue in this case. Rather, the "utility software" industry has been fraught with these tactics for over a decade. It's only recently, however, that software developers—like SlimWare and its competitors—have been called to account for their profiting from consumers' inability to identify the software's deceptive engineering and reporting metrics.

41.     Indeed, numerous lawsuits have been filed against well-known competitors of SlimWare (*e.g.*, Symantec Corp. and McAfee, Inc.) by Plaintiffs' counsel here—alleging similar claims related to the fraudulent design and marketing of so-called utility software products, as described above. Several of those cases have resulted in classwide settlements and industry-changing modifications to the software products at issue—making their detection, reporting and repairing mechanisms far more transparent and more accurately informing consumers of the threats posed by existing errors on their computers—and still others are pending.

42.     Rather than modifying its software to honestly detect, report, and repair errors and other harmful problems affecting users' PCs, SlimWare has remained steadfast in its fraudulent conduct and, to this day, continues to profit from it.

**FACTS RELATING TO PLAINTIFF JAMES HENEGHAN**

43.     In or around November 2012, Plaintiff Heneghan encountered SlimWare's online advertisements for FixCleaner while browsing the Internet. These advertisements, which were substantially similar to those depicted in Figures 1–4, claimed that FixCleaner would enhance the performance and speed of his computer. In order to optimize and maintain the health of his computer system, SlimWare, through its advertisements, suggested that Heneghan download and

15

install FixCleaner. Although he was not experiencing any problems with his computer, these representations convinced Heneghan to navigate to SlimWare's website—www.fixcleaner.com—to learn more about the software.

44.     After arriving at SlimWare's website, and relying on the representations displayed there—namely, that FixCleaner would enhance the performance and speed of his computer and perform such beneficial tasks as those depicted in Figures 1–4 and described in paragraphs 17, 19, 21, and 22 above—Heneghan purchased the full registered version of the software.

45.     After downloading and installing the full registered version of the FixCleaner software, Heneghan performed a diagnostic "scan" of his computer. FixCleaner reported that his computer was afflicted by thousands of errors, resulting in "LOW" system health, and that his computer needed to be repaired.

46.     After performing a "fix" with the software, and relying upon SlimWare's statements about the functionality and utility of FixCleaner, as well as the software's representations that his computer was in serious need of repair, Heneghan decided to continue using the software. Indeed, every time Heneghan ran FixCleaner, the software reported that harmful errors were adversely affecting his computer and that he needed to "fix" the errors using FixCleaner. Yet, despite the fact that he repeatedly ran FixCleaner's scan, and purportedly "fixed" the reported errors, he began experiencing recurring problems with the speed and performance of his computer.

47.     Ultimately, the truth is that the errors "detected" by FixCleaner on Heneghan's PC were exaggerated and not actually causing damage to his computer as indicated by the software. As such, Heneghan was misled into believing that his computer was at-risk and that he

16

needed to continue to use the full registered version of FixCleaner in order to repair and/or protect it from the purported errors and problems.

48.     But for SlimWare's representations on its websites regarding the functionality and benefits of FixCleaner, Heneghan would not have downloaded, installed, and ran the software on his computer. Similarly, but for the misrepresentations made by the FixCleaner software itself—namely, that Heneghan's computer was damaged by thousands of errors and suffered from "LOW" system health—Heneghan would not have agreed to continue to use the software.

49.     Because the full registered version of FixCleaner cannot actually provide the level of utility represented by SlimWare (*i.e.*, perform any credible assessment of Heneghan's PC, accurately categorize and report "errors," nor enhance the speed of his computer), he bought a software product worth much less than reflected in its purchase price.

**FACTS RELATING TO PLAINTIFF GREGORY PERKINS**

50.     In or around June 2011, Plaintiff Perkins performed an Internet search for software to optimize and increase the speed and performance of his computer. During his search, Perkins encountered SlimWare's advertisements for its FixCleaner software, and viewed its marketing materials and representations about the software's utility, such as those depicted in Figures 1–4 and described in paragraphs 17, 19, 21, and 22 above, including the assertion that FixCleaner would "Fix, Clean & SPEEDUP [his] PC!"

51.     After arriving at SlimWare's website, and relying on the representations displayed there—namely, that FixCleaner would accurately identify, report and repair a variety of computer errors and other problems, enhance the performance and speed of his computer, and perform such beneficial tasks as those described in Section II above—Perkins downloaded a free trial version of the software.

52.     After Perkins installed FixCleaner, he used the software to conduct a diagnostic scan of his computer. Perkins recalls that FixCleaner informed him that thousands of problems were afflicting his computer and needed to be repaired. But, because FixCleaner designed its software to *always* report that harmful errors existed on his computer, Perkins was misled into believing that his computer required repair—although no credible assessment actually occurred.

53.     Through the software's design, SlimWare deceived Perkins into thinking FixCleaner was making meaningful repairs to his PC, thus he elected to continue using and eventually purchased the full registered version of FixCleaner.

54.     In reality, as described above, FixCleaner did not actually detect thousands of errors as SlimWare claimed because the software arbitrarily reported problems as serious and did not actually perform the beneficial tasks described in its marketing materials and advertisements. Nor did the software accurately identify and report the actual condition of Perkin's computer. As such, Perkins was misled into believing that his computer was at-risk, and that he needed to continue to use FixCleaner in order to repair it.

55.     In fact, every time Perkins ran FixCleaner, the software reported that harmful errors were adversely affecting his computer and that he needed to "fix" the errors using the software. Yet, despite the fact that he repeatedly ran FixCleaner's scan, and purportedly "fixed" the reported errors, his computer continued to suffer from the same problems he experienced prior to purchasing and running the software—namely, freezing up and slow Internet browsing. Worse yet, the speed and performance of his computer actually deteriorated after using the software and the frequency with which Perkin's computer froze increased substantially— requiring hard-resets and/or forced shutdowns to regain use of his computer (*i.e.*, removing the computer's power source).

18

56.     Perkins reasonably relied upon SlimWare's representations about FixCleaner's utility, in that he believed the software would actually perform the operations described in its marketing materials and advertisements. But for these representations, Perkins would not have purchased and continued to use the software.

## CLASS ALLEGATIONS

57.     **Class Definition**: Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of themselves and a Class of similarly situated individuals, defined as follows:

All individuals and entities in the United States who have purchased FixCleaner. Excluded from the Class are (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entity's current and former employees, officers, and directors, (2) the Judge to whom this case is assigned and the Judge's immediate family, (3) persons who execute and file a timely request for exclusion from the Class, (4) persons who have had their claims in this matter finally adjudicated and/or otherwise released, and (5) the legal representatives, successors, and assigns of any such excluded person.

58.     **Numerosity**: The exact number of members of the Class is unknown and is not available to Plaintiffs at this time, but individual joinder in this case is impracticable. The Class likely consists of thousands of individuals and other entities. Class members can be easily identified through Defendant's records and public records.

59.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Class, and those questions

predominate over any questions that may affect individual members of the Class. Common
questions for the Class include but are not limited to the following:

a)     whether Defendant intentionally designed FixCleaner to invariably report
       that harmful errors and threats exist on a user's computer, regardless of the
       computer's actual condition;

b)     whether Defendant intentionally misrepresented the functionality of
       FixCleaner;

c)     whether Defendant's conduct described herein constitutes violations of the
       Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS
       505/1, *et seq*.;

d)     whether Defendant's conduct described herein constitutes fraudulent
       inducement;

e)     whether Defendant's conduct described herein constitutes a breach of
       contract; and

f)     whether Defendant has been unjustly enriched as a result of its conduct
       described herein.

60.     **Typicality**: Plaintiffs' claims are typical of the claims of the other members of the
Class. Plaintiffs and the Class sustained damages as a result of SlimWare's uniform wrongful
conduct during transactions with Plaintiffs and the Class.

61.     **Adequate Representation**: Plaintiffs will fairly and adequately represent and
protect the interests of the Class, and have retained counsel competent and experienced in
complex litigation and class actions. Plaintiffs have no interests antagonistic to those of the
Class, and SlimWare has no defenses unique to Plaintiffs. Plaintiffs and their counsel are

committed to vigorously prosecuting this action on behalf of the members of the Class, and have

the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to

those of the other members of the Class.

62.     **Policies Generally Applicable to the Class**: This class action is also appropriate

for certification because SlimWare has acted or refused to act on grounds generally applicable to

the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible

standards of conduct toward the members of the Class, and making final injunctive relief

appropriate with respect to the Class as a whole. SlimWare's policies challenged herein apply

and affect the members of the Class uniformly and Plaintiffs' challenge of these policies hinges

on SlimWare's conduct with respect to the Class as a whole, not on facts or law applicable only

to Plaintiffs.

63.     **Superiority**:  This case is appropriate for certification because class proceedings

are superior to all other available methods for the fair and efficient adjudication of this

controversy. The injuries suffered by the individual members of the Class are likely to have been

relatively small compared to the burden and expense of individual prosecution of the litigation

necessitated by Defendant's actions. Absent a class action, it would be difficult, if not

impossible, for the individual members of the Class to obtain effective relief from Defendant.

Even if members of the Class themselves could sustain such individual litigation, it would not be

preferable to a class action because individual litigation would increase the delay and expense to

all parties and the Court and require duplicative consideration of the legal and factual issues

presented herein. By contrast, a class action presents far fewer management difficulties and

provides the benefits of single adjudication, economy of scale, and comprehensive supervision

by a single Court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

64.     Plaintiffs reserve the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

**FIRST CAUSE OF ACTION**
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 ILCS 505/1, *et seq.***
**(On behalf of Plaintiffs and the Class)**

65.     Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

66.     The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*. (the "Consumer Fraud Act"), protects both consumers and companies by promoting fair competition in commercial markets for goods and services.

67.     The Consumer Fraud Act prohibits any unlawful, unfair or fraudulent business acts or practices including the employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact.

68.     As described herein, Defendant has engaged in deceptive and fraudulent business practices, as defined by the Consumer Fraud Act by, *inter alia*: (i) misrepresenting the utility and functionality of FixCleaner, including through assertions such as those depicted in Figures 1–4 and described in paragraphs 17, 19, 21, and 22, (ii) misrepresenting the health, performance and security of users' computers through in-software representations found in the free trial and full registered versions of the software, (iii) using the misrepresentations to induce consumers into purchasing and continuing to use FixCleaner, and (iv) selling a version of the software that lacked the advertised utility, similarly produced false error reports, and otherwise was incapable of functioning as Defendant represented it would.

69.     Defendant's representations were, in fact, false. Defendant's software does not (and cannot) actually perform all of the benefits that it promises through its marketing and websites. Likewise, FixCleaner's scan results were false, because FixCleaner did not perform any meaningful evaluation of Plaintiffs' and the Class's computers or any problems contained thereon before representing to Plaintiffs and the Class that their computers needed repair. In addition, even after the software "repairs" errors and allegedly restores system health, subsequent scans often reveal that the same errors previously detected are once again occurring.

70.     Furthermore, the only reasons for consumers to purchase FixCleaner are to ensure any errors are fixed and to increase their computers' performance. As such, the free trial versions' false results and its failure to offer the level of utility advertised by Defendant were deceptive and were likely to mislead consumers acting reasonably under the circumstances. Likewise, the full registered version is likely to mislead reasonable consumers into believing that the software is functioning as advertised and that it is necessary to continue to use the software to maintain the health and security of their computers.

71.     Defendant has violated the "unfair" prong of the Consumer Fraud Act in that it caused substantial injury to consumers through its actions identified above. The injury caused by Defendant's conduct is not outweighed by any countervailing benefits to consumers, and the injury is one that consumers themselves could not reasonably have avoided. Given the information asymmetry between Defendant and consumers regarding FixCleaner's functionality, Defendant knew or had reason to know that Plaintiffs and the Class could not reasonably have known of or discovered the falsity of Defendant's representations or avoided the harm those misrepresentations caused.

72.     Defendant has also violated the "fraudulent" prong of the Consumer Fraud Act in that its statements, advertisements, and representations regarding the utility and functionality of FixCleaner—substantially similar to those depicted in Figures 1–4 and described in paragraphs 17, 19, 21, and 22, and the results of the software's scans are false and likely to deceive a reasonable consumer, as described in Sections II–III.

73.     Defendant's fraudulent, unfair, and unlawful conduct occurred during the marketing and sale of computer software products, and therefore occurred in the course of Defendant's business practices.

74.     Defendant's fraudulent, unfair, and unlawful conduct directly and proximately caused Plaintiffs and the Class actual monetary damages in the form of the price paid for FixCleaner—typically $34.95—or, at least, the difference between what they paid for the software and its actual value.

75.     But for Defendant's fraudulent, unfair, and unlawful conduct as described herein, Plaintiffs and the Class would not have purchased the FixCleaner software, or would have paid substantially less for it.

76.     Plaintiffs seek an order: (i) permanently enjoining Defendant from continuing to engage in the fraudulent, unfair and unlawful conduct described herein; (ii) requiring Defendant to pay actual, compensatory, and punitive damages; and (iii) requiring Defendant to pay interest, reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**Fraudulent Inducement**
**(On behalf of Plaintiffs and the Class)**

77.     Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

24

78. As depicted in Figures 1–4 and described in paragraphs 17, 19, 21, and 22, and throughout all Counts of this Complaint, Defendant has used, and continues to use, marketing tactics it knows or reasonably should know are false and misleading.

79. To induce Plaintiffs and the Class to purchase FixCleaner, Defendant affirmatively represented that FixCleaner provided a specific level of utility. That is, Defendant represented that FixCleaner would honestly and accurately scan Plaintiffs' and the Class's computers for harmful errors and problems, increase their computers' speed and stability, protect their computers' privacy, and otherwise perform the beneficial tasks described in paragraphs 17–22. Further, through the software itself, Defendant affirmatively represented that Plaintiffs' and the Class's computers were afflicted with dozens of harmful errors and problems, as described in Section III, thus requiring immediate repair by the software.

80. Defendant's representations were, in fact, false. Defendant's software does not (and cannot) actually perform all of the benefits that it promises through its marketing and websites. Likewise, FixCleaner's scan results were false, because FixCleaner did not perform any meaningful evaluation of Plaintiffs' and the Class's computers or any problems contained thereon before representing to Plaintiffs and the Class that their computers needed repair. In addition, even after the software "repairs" errors and allegedly restores system health, subsequent scans often reveal that the same errors previously detected are once again occurring.

81. The utility of a consumer product is a material term of any transaction because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a product. Any deception or fraud related to the utility of a product is materially misleading.

82. As FixCleaner's designer, Defendant knew that its representations about FixCleaner's functionality were false. Defendant intentionally designed its public representations

to mislead consumers about FixCleaner's functionality, and programmed FixCleaner (both the free and full registered versions) to falsely report computer errors and to deceive users about their computers' system health, performance and security.

83.     Defendant intended that its misrepresentations would induce consumers to rely on, and act based on, the false claims of a computer's health or lack thereof. In particular, Defendant made these misrepresentations with the specific purpose to induce Plaintiffs and the other members of the Class to rely upon them when downloading and paying to register the FixCleaner software, and thereafter continuing to use the software.

84.     As consumers lacking the requisite technical expertise to independently gauge FixCleaner's underlying functionality, and taking Defendant's statements at face value, Plaintiffs justifiably relied upon Defendant's misrepresentations by purchasing, using and continuing to use the software. But for Defendant's misrepresentations and conduct described herein, neither Plaintiffs nor the Class would have purchased or continued to use FixCleaner, or they would have paid substantially less to do so.

85.     By using false and fraudulent marketing tactics, and exaggerated and fraudulent in-software representations, Defendant has engaged in fraudulent practices designed to mislead and deceive consumers into purchasing FixCleaner.

86.     As a result of their reasonable reliance upon on Defendant's misrepresentations, Plaintiffs and the Class have been damaged in the amount of FixCleaner's purchase price—typically $34.95—or, at least, the difference between what they paid for the software and its actual value.

87.     Plaintiffs seek an order: (i) requiring Defendant to pay actual and compensatory damages; and (ii) requiring Defendant to pay interest, reasonable attorneys' fees and costs.

Plaintiffs further request that if the Court finds that Defendant's conduct and misrepresentations were made with malice and in conscious disregard for Plaintiffs' and the Class's rights, they should be awarded punitive damages against Defendant in an amount sufficient to deter such conduct in the future.

### THIRD CAUSE OF ACTION
### Breach of Contract
### (On behalf of Plaintiffs and the Class)

88.    Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

89.    Plaintiffs and the Class members entered into agreements with Defendant whereby Defendant agreed to sell, and Plaintiffs and the Class agreed to purchase software that would detect, report and repair legitimate computer errors and problems existing on Plaintiffs' and the Class's computers. More specifically, Defendant agreed to sell Plaintiffs and the Class software that was purportedly designed to and capable of increasing the speed, performance and stability of their computers and detecting, reporting and repairing a variety of harmful computer errors and problems, as described in paragraphs 17–22.

90.    Plaintiffs and the Class paid, and Defendant accepted, FixCleaner's purchase price, and therefore performed their obligations under the contracts.

91.    As such, Defendant voluntarily assumed a contractual obligation to provide Plaintiffs and the Class with software that would perform the beneficial tasks described in paragraphs 17–22, and that would honestly diagnose and remove problems and/or errors existing on their computers.

92.    Defendant breached its contracts with Plaintiffs and the Class by intentionally designing FixCleaner to mischaracterize the true condition of the computers upon which it was

27

installed and run, as described in Sections II–III, and further by failing to provide software that performed the tasks described in paragraphs 17–22. These obligations are material terms of the agreement.

93.     Defendant did not honor these obligations, as FixCleaner was incapable of actually performing the beneficial tasks promised by Defendant.

94.     Likewise, Illinois contract law recognizes the implied covenant of good faith and fair dealing in every contract. Thus, implicit in its contracts with Plaintiffs and the Class were provisions prohibiting Defendant from engaging in conduct that frustrated or injured Plaintiffs' and the Class's rights to receive the benefits of the agreement.

95.     Defendant acted in bad faith and breached these provisions of the agreement, specifically by not honoring its responsibilities to perform truthful diagnostic and remedial operations, as described herein, and instead, providing software that it intentionally designed to produce false errors reports, misrepresent the actual status of users' computers, and which was incapable of repairing the purported errors as advertised.

96.     Furthermore, Defendant was under an implicit obligation to comply with 815 ILCS 505/1, *et seq*., to be truthful in its advertisements, and to accurately disclose the functionality and utility of its software products. Defendant did not honor any of these obligations.

97.     Defendant breached the implied covenant of good faith and fair dealing by failing to (i) provide a full version of the software that was capable of performing the benefits described in paragraphs 17–22 above, (ii) honestly and accurately inform consumers of the condition of their computers, and (iii) fully comply with the proscriptions of applicable statutory law.

98.     The aforementioned breaches of contract have caused Plaintiffs and the Class economic injury and other damages, including in the form of the purchase price of the FixCleaner software (or a portion thereof), because they purchased a product that does not perform as Defendant promised, and therefore lacks the utility contracted for.

99.     Plaintiffs seek an order: (i) requiring Defendant to pay actual and compensatory damages; and (ii) requiring Defendant to pay interest, reasonable attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**Unjust Enrichment, *in the alternative to Breach of Contract*** **(On behalf of Plaintiffs and the Class)**

100.    Plaintiffs incorporate by reference allegations 1–87 as if fully set forth herein.

101.    If the Court finds Plaintiffs' and the Class's contracts with Defendant invalid, non-existent, or unenforceable, Plaintiffs and the members of the Class may be left without any adequate remedy at law.

102.    Plaintiffs and the Class have conferred a benefit upon Defendant in the form of the money Defendant charged and collected from them for the purchase of the full registered version of the FixCleaner software.

103.    Defendant appreciates and/or has knowledge of the benefits conferred upon it by Plaintiffs and the Class, and has retained those benefits inasmuch as Plaintiffs and the other members of the Class have yet to receive a full refund of the monies they paid to purchase the FixCleaner software.

104.    Under principles of equity and good conscience, Defendant should not be permitted to retain the monies belonging to Plaintiffs and the Class that it unjustly received as a result of its wrongful conduct described herein.

105.     Accordingly, Plaintiffs, on behalf of themselves and the other members of the

Class, seek restitution and disgorgement of all amounts by which Defendant has been unjustly

enriched.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs James Heneghan and Gregory Perkins on behalf of

themselves and the Class, respectfully requests that the Court enter an order:

A.     Certifying this case as a class action on behalf of the Class defined above,

appointing James Heneghan and Gregory Perkins as class representatives, and appointing their

counsel as class counsel;

B.     Declaring that Defendant's actions, as set out above, constitute (i) violations of

the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*, (ii)

fraudulent inducement, (iii) breach of contract, and (iv) unjust enrichment (in the alternative to

breach of contract);

C.     Awarding injunctive and other equitable relief as necessary to protect the interests

of the Class, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful

and unlawful acts described herein;

D.     Awarding damages to Plaintiffs and the Class in an amount to be determined at

trial;

E.     Awarding restitution to Plaintiffs and the Class in an amount to be determined at

trial, and requiring Defendant to disgorge all amounts by which it was unjustly enriched;

F.     Awarding Plaintiffs and the Class their reasonable litigation expenses and

attorneys' fees;

G.      Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent

allowable; and

H.      Awarding such other and further relief as the Court deems reasonable and just.

### JURY TRIAL

Plaintiffs demand a trial by jury for all issues so triable.

Respectfully submitted,

**JAMES HENEGHAN and GREGORY
PERKINS**, individually and on behalf of all others
similarly situated,

Dated: May 31, 2013                          By: /s/ David I. Mindell
                                             One of Plaintiffs' Attorneys

RAFEY S. BALABANIAN
rbalabanian@edelson.com
BENJAMIN H. RICHMAN
brichman@edelson.com
CHANDLER R. GIVENS
cgivens@edelson.com
DAVID I. MINDELL
dmindell@edelson.com
EDELSON LLC
350 North LaSalle, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378