IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| JAMES HENEGHAN and GREGORY PERKINS, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>SLIMWARE UTILITIES, INC., a Mississippi corporation,<br><br>*Defendant*. | Case No. 1:13-cv-04056 |

**PLAINTIFFS' MOTION FOR AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION**

Plaintiffs James Heneghan ("Heneghan") and Gregory Perkins ("Perkins") (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby respectfully move the Court for an Order certifying this case as a class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3), but request that the Court enter and continue the instant motion until after the completion of discovery on class wide issues, at which time Plaintiffs will submit a fulsome memorandum of points and authorities in support of class certification.[1]

**I.     INTRODUCTION.**

This matter presents a model case for class certification. Defendant SlimWare Utilities ("Defendant" or "SlimWare") promised Plaintiffs and each member of the putative Class that its FixCleaner software was capable of honestly and accurately diagnosing, reporting, and repairing

---

[1] Plaintiffs filed this motion at the outset of the litigation to prevent Defendant from attempting a so-called "buy off" to moot their representative claims (*i.e.*, tendering to them the full amount of their individual damages alleged in the Complaint). *See Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011) ("Class-action plaintiffs can move to certify the class at the same time that they file their complaint. The pendency of that motion protects a putative class from attempts to buy off the named plaintiffs . . . If the parties have yet to fully develop the facts needed for certification, then they can also ask the district court to delay its ruling to provide time for additional discovery or investigation.").

a broad range of computer errors and other problems, and improving the overall performance of their computers. Rather than perform those beneficial tasks, however, FixCleaner—by intentional design—invariably reported that harmful errors and other threats existed on the users' computers, regardless of the computer's actual condition. From there, Defendant urged users to remove the supposed errors by purchasing and continuing to use the full version of the FixCleaner software, which they did in reliance upon Defendant's misrepresentations in its marketing materials, on its website, and through the software itself.

Plaintiffs are two such consumers who were duped into purchasing the FixCleaner software. In response to Defendant's conduct, Plaintiffs filed the instant lawsuit and now respectfully move the Court for an Order certifying this case as a class action pursuant to Federal Rule of Civil Procedure 23. Plaintiffs' claims are readily certifiable: potentially thousands of consumers, like Plaintiffs, were subjected to Defendant's misrepresentations that FixCleaner would accurately identify, report and repair harmful threats and enhance their computers' overall performance. At no time, however, did Defendant disclose to them that FixCleaner was incapable of performing the advertised functions or that its error reports would be false or overstated, thereby inducing consumers to purchase and continue to use full version of the software. As a result, every putative Class member purchased software that failed to perform in the same manner, as uniformly advertised, and suffered injury in a nearly identical manner.

For these reasons and as discussed further below, the proposed Class meets each of the requisites to certification under Rules 23(a), (b)(2), and (b)(3), and the instant motion should be granted in its entirety. Notwithstanding, Plaintiffs respectfully request that the Court enter and reserve ruling on this motion until after the completion of discovery on class wide issues, at which time Plaintiffs will submit a fulsome memorandum of points and authorities in support of

class certification.

## II. FACTUAL BACKGROUND.

### A. Facts Applicable to All Putative Class Members.

Defendant markets and advertises FixCleaner as software that will increase the speed, performance and stability of a consumer's computer, protect against privacy risks, remove harmful errors, and improve Internet performance. (Compl. ¶ 1.) Through its websites and online marketing materials, Defendant encourages consumers to download FixCleaner to perform a diagnostic scan to detect the issues that it is supposedly designed to fix.[2] (*Id*. ¶¶ 4, 20, 25.) However, rather than provide an accurate diagnosis of a computer's health and performance, consumers who download FixCleaner are uniformly notified that their computers are afflicted by thousands of supposed errors and problems. (*Id*. ¶¶ 4, 5, 6, 24.) That is because Defendant intentionally designed FixCleaner to invariably report that a user's computer needs repair and is afflicted with harmful errors, privacy risks, and other problems—regardless of the computer's actual condition. (*Id*. ¶¶ 5, 36.) Defendant intentionally designed FixCleaner to operate in this deceptive manner so as to induce users into believing that their computers were in need of immediate repair and to pay to register and continue to use FixCleaner, in order to repair so-called errors going forward. (*Id*. ¶¶ 1, 27, 32.)

### B. Facts Applicable to Plaintiff Heneghan.

Plaintiff Heneghan is just one of potentially thousands of consumers who purchased and

---

[2] Users may (i) download and use FixCleaner for thirty (30) days, after which time the trial period expires and the full registered version must be purchased for continued use of the software, (ii) download a free or "slim" version that purports to "fix" only a limited number of issues, the remainder of which will only be fixed through purchase of the full version, or (iii) purchase the full registered version outright with a sixty (60) day money back guarantee. Regardless of the method by which a consumer purchases FixCleaner, they are led to believe that the software is functioning as advertised—*i.e.*, effectively detecting and removing errors that cause system-wide problems—when in fact, as shown below, that's simply not the case. (Compl. ¶ 5.)

downloaded the FixCleaner software. Specifically, in or around November 2012, Heneghan encountered Defendant's online advertisements for FixCleaner while browsing the Internet. (Compl. ¶ 43.) These advertisements claimed that FixCleaner would enhance the performance and speed of his computer. (*Id.*) Relying upon these representations, Heneghan agreed to purchase and download the software. (*Id.* ¶ 44.) After downloading and installing the full registered version of the software, Heneghan performed a diagnostic "scan" of his computer. (*Id.* ¶ 45.) FixCleaner's scan reported that his computer was afflicted by thousands of errors, resulting in "LOW" system health, and that his computer needed to be repaired. (*Id.*)

Relying upon SlimWare's statements about the utility of FixCleaner, and representations that his computer was in serious need of repair, Plaintiff Heneghan decided to continue using the software, and paid a fee to do so. (*Id.* ¶ 46.) However, every time Plaintiff Heneghan ran FixCleaner, the software reported that harmful errors were adversely affecting his computer and that he needed to "fix" the errors using FixCleaner. (*Id.*) Yet, despite the fact that he repeatedly ran FixCleaner's scan, and purportedly "fixed" the reported errors, he began to experience recurring problems with the speed and performance of his computer. (*Id.*)

    **C.**    **Facts Applicable to Plaintiff Perkins.**

Plaintiff Perkins is another consumer who purchased and downloaded the FixCleaner software. In or around June 2011, Perkins viewed representations on Defendant's website claiming that FixCleaner would accurately identify, report and repair a variety of computer errors and other problems, enhance the performance and speed of his computer, and otherwise "Fix, Clean & SPEEDUP [his] PC!" (*Id.* ¶¶ 50-51.) Relying upon these representations, Perkins downloaded a free trial version of FixCleaner. (*Id.* ¶ 51.) Perkins used the software to perform an initial diagnostic scan of his computer, which reported that the machine was afflicted by

4

thousands of errors and in need of repair. (*Id*. ¶ 52.)

Believing that the software was removing harmful errors, Perkins continued to use and eventually purchased the full version of the software. (*Id*. ¶ 53.) Nevertheless, every time Perkins ran FixCleaner, the software reported that harmful errors were adversely affecting his computer and that he needed to "fix" the errors using the software. (*Id*. ¶ 55.) Yet, despite the fact that he repeatedly ran FixCleaner's scan, and purportedly "fixed" the reported errors, his computer continued to suffer from the same problems he experienced prior to purchasing and running the software—namely, freezing up and slow Internet browsing speeds. (*Id*.) Worse yet, the speed and performance of his computer actually deteriorated after using the software and the frequency with which his computer froze increased substantially—requiring hard-resets and/or forced shutdowns to regain use of his computer (*i.e.*, removing the computer's power source). (*Id*.)

### D. The Proposed Class.

As a result of Defendant's conduct described above, Plaintiffs brought the instant lawsuit and now seek certification of a nationwide class of similarly situated persons (the "Class"), defined as follows:

All individuals and entities in the United States who have purchased FixCleaner.

As demonstrated below, the proposed Class meets each of Rule 23's requisites to certification and therefore, the instant motion should be granted in its entirety.

### III. THE PROPOSED CLASS SATISFIES EACH OF THE REQUIREMENTS FOR CERTIFICATION.

Class certification is appropriate under Rule 23 when the proponent of certification demonstrates that each of the requirements of Rule 23(a) and at least one of the subsections under Rule 23(b) have been satisfied. Rule 23(a) requires that (i) the proposed class is so numerous that joinder of all individual class members is impracticable (numerosity); (ii) that

there are common questions of law and fact amongst class members (commonality); (iii) that the proposed representative's claims are typical of those of the class (typicality); and, (iv) that both the named-representative and his or her counsel have and will continue to adequately represent the interests of the class (adequacy).

In this case, Plaintiffs seek certification of the proposed Class under both Rule 23(b)(2) and (b)(3). In order to certify a class under Rule 23(b)(2), a plaintiff must show that the party opposing certification has acted or failed to act on grounds generally applicable to the class as a whole, "so that final injunctive relief or corresponding declaratory relief is appropriate…." Under Rule 23(b)(3) there must be (i) questions of law or fact common to the proposed class members, which predominate over any questions affecting only individual members, and (ii) the class mechanism must be superior to other available methods for fairly and efficiently adjudicating the controversy.

In determining whether to certify a proposed class, a court does not inquire into the merits of the plaintiff's claims. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). Instead, "for purposes of considering a motion for class certification, the substantive allegations of the complaint are generally assumed to be true and it is also assumed that cognizable claims are stated." *Anderson v. Cornejo*, 199 F.R.D. 228, 237 (N.D. Ill. 2000). Thus, courts are required to analyze the allegations of the complaint and any evidence submitted by the parties, with a presumption in favor of certification. *Id*.

As explained further below, the proposed Class in this case meets all of the requirements of Rules 23(a), (b)(2) and (b)(3), and therefore, can properly be certified.

### A. The Numerosity Requirement is Satisfied.

Rule 23(a)'s first requirement—numerosity—is satisfied where "the class is so numerous

6

that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). However, there is no specific number required, nor are the plaintiffs required to state the exact number of potential class members. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006). Generally, "[t]he court is permitted to make common-sense assumptions that support a finding of numerosity." *Maxwell v. Arrow Fin. Servs., LLC*, 2004 WL 719278, *2 (N.D. Ill. 2004); *see also* 3 ALBA CONTE & HERBERT B. NEWBERG, *Newberg on Class Actions* § 7.20, 66 (4th ed. 2001).

Here, Plaintiffs allege—and discovery will show—that Defendant has deceived thousands of consumers into purchasing and continuing to use its FixCleaner software. (Compl. ¶¶ 6, 7, 58.); *see Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669 (N.D. Ill. 1989) (classes numbering in the thousands "clearly" satisfy the numerosity requirement); ALBA CONTE & HERBERT NEWBERG, *Newberg on Class Actions* § 3:5, 243-46 (4th ed. 2002) ("Class actions under the amended Rule 23 have frequently involved classes numbering in the hundreds, or thousands . . . In such cases, the impracticability of bringing all class members before the court has been obvious, and the Rule 23(a)(1) requirement has been easily met."). Accordingly, the proposed Class satisfies the numerosity requirement.[3]

### B.     The Commonality Requirement is Satisfied.

Next, Rule 23(a)(2) requires that "there are questions of law or fact common to the class." To meet the commonality requirement, the named-representative is required to demonstrate that the proposed class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). In other words, commonality requires that the claims of the class "depend upon

---

[3]     Of course, to the extent the Court requires additional details regarding the number of members in the Class, such information may be readily obtained through discovery and specifically, Defendant's records.

7

a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Commonality is present where a "common nucleus of operative fact" exists, even if as to one question of law or fact, *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992), and is often found where "defendants have engaged in standardized conduct toward members of the proposed class." *Whitten v. ARS Nat'l Servs. Inc.*, 2001 WL 1143238, at *3 (N.D. Ill. Sept. 27, 2001) (internal quotations omitted). The question of commonality is a relatively low and easily surmountable hurdle. *Scholes v. Stone, McGuire, & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992).

As alleged in this case, all members of the proposed Class share common questions of fact that predominate over issues affecting only individual members. Those common factual issues for the Class include: (1) whether Defendant intentionally designed FixCleaner to invariably report that harmful errors and threats exist on a user's computer, regardless of the computer's actual condition, (2) whether Defendant intentionally misrepresented the true functionality of the FixCleaner software, and (3) whether FixCleaner charged and collected fees from them related to the purchase of the software.

Those common factual questions also lead to several legal questions common to the Class, including: (1) whether Defendant's conduct constitutes a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*.; (2) whether Defendant's conduct constitutes fraudulent inducement; (3) whether Defendant's conduct constitutes a breach of contract; and (4) in the alternative, whether Defendant has been unjustly enriched as a result of its conduct. (Compl. ¶ 59.)

Accordingly, the commonality requirement is met and any supposedly missing

information can be secured through discovery.

    **C.    Plaintiffs' Claims are Typical of the Class.**

Rule 23(a) next requires that Plaintiffs' claims are typical of those of the other Class members. Fed. R. Civ. P. 23(a)(3). The typicality requirement is closely related to commonality and is satisfied if Plaintiffs' claims arise from "the same event or practice or course of conduct that gives rise to the claims of other class members and . . . are based on the same legal theory." *Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 432 (N.D. Ill. 2003) (internal quotations omitted). Nevertheless, the existence of factual differences will not preclude a finding of typicality; the claims of a named plaintiff need only share "the same essential characteristics" as those of the class. *Id.* Indeed, "'[s]imilarity of legal theory is more important than factual similarity….'" *Id.* (quoting *Harris v. City of Chicago*, 1998 WL 59873, at *5 (N.D. Ill. Feb. 9, 1998).

In this case, Plaintiffs and the proposed Class suffered from a common course of conduct. That is, Defendant misrepresented the utility of its FixCleaner software to Plaintiffs and the proposed Class, intentionally designed the software to misrepresent to them the health of their computers, and, induced them to remit payment for the full version of the software despite the knowledge that it could not perform the beneficial tasks promised. (Compl. ¶¶ 7, 49, 54, 56, 74, 85, 97.) As a result of Defendant's conduct, Plaintiffs and the proposed Class were damaged in a nearly identical manner; namely, in the form of the monies Defendant collected from them for the purchase of the full version of the software. (*Id*.) As such, by pursuing their own claims, Plaintiffs will necessarily advance the interests of the proposed Class in satisfaction of Rule 23(a)(3)'s typicality requirement.

### D. The Adequacy of Representation Requirement is Satisfied.

Finally, Rule 23(a) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This means that both a proposed class representative and his counsel have the ability to "zealously represent and advocate on behalf of the class as a whole." *Maxwell*, 2004 WL 719278, at *5. The proposed class representative must not have claims that are "antagonistic or conflicting . . . with other members of the class," and must have a "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Id.* (internal quotations omitted). Additionally, proposed class counsel must be competent and have the resources necessary to sustain the complex litigation necessitated by class claims; it is persuasive evidence that proposed class counsel have been found adequate in prior cases. *Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987).

Plaintiffs Heneghan and Perkins have the same interests as the other members of the Class. They were all deceived into purchasing and continuing to use the FixCleaner software and have lost money in the form of the fees Defendant charged and collected from them as a result. (Compl. ¶¶ 7, 49, 54, 56, 74, 85, 97.) Plaintiffs have no interests antagonistic to those of the Class and therefore, will fairly and adequately protect the interests of the Class. (*Id*. ¶ 61.) Their pursuit of the instant action demonstrates as much.

Similarly, Plaintiffs' counsel are well-respected members of the legal community, who have extensive experience in class actions of similar size, scope, and complexity to the instant action. (Compl. ¶ 61; *see also* Firm Resume of Edelson LLC, attached as Exhibit 1-A to the Declaration of Benjamin H. Richman ["Richman Decl."].) Moreover, they have regularly engaged in major complex litigation involving fraudulent software and consumer technology issues, have the resources necessary to conduct litigation of this nature, and have frequently been

10

appointed lead class counsel by courts throughout the country. (Richman Decl. ¶¶ 4-5.) Proposed class counsel have already diligently investigated the claims at issue in this action and dedicated substantial resources to the case, and will continue to do so throughout its pendency. (*Id.* ¶ 6.)

### E. The Proposed Class Meets the Requirements of Rule 23(b)(2).

Once the prerequisites of Rule 23(a) have been satisfied, one of the three subsections of Rule 23(b) must be satisfied as well. Here, Plaintiffs seek certification of the proposed Class under Rules 23(b)(2) and (b)(3).

Rule 23(b)(2) provides that the party opposing certification must have acted or failed to act on grounds generally applicable to the proposed class, "so that final injunctive relief or corresponding declaratory relief is appropriate." *Brown v. Yellow Transp., Inc.*, 2011 WL 1838741, at *2 (N.D. Ill. May 11, 2011) (quoting Fed. R. Civ. P. 23(b)(2)). The requirement that the defendant act on grounds generally applicable to the class, like the whole of Rule 23, is to be "liberally construed so as to favor the maintenance of class actions where appropriate." *Yellow Transp.*, 2011 WL 1838741, at *2; *see also King v. Kansas City So. Indus.*, 519 F.2d 20, 26 (7th Cir. 1975). Where a court finds that Rule 23(a)'s commonality requirement is met, the courts have typically found that there is a sufficient showing that the defendant acted on grounds generally applicable to the class as a whole. *See Lemon v. Int'l. Union of Operating Engineers, Loc. No. 139, AFL-CIO*, 216 F.3d 577, 580 (7th Cir. 2000); *Yellow Transp.*, 2011 WL 183871, at *7.

Here, Defendant systematically promoted its FixCleaner software through false and misleading online advertisements and misrepresentations on its websites regarding the utility of the software. (Compl. ¶¶ 3, 24, 83.) Further, Defendant intentionally designed FixCleaner to falsely and invariably report the existence of harmful errors and threats on consumer's PCs,

11

thereby inducing them to purchase and continue to use the full version of the software to remedy the purported errors. (*Id.* ¶¶ 4, 21, 25, 38.) Regardless of the actual form they took, each of the misrepresentations Defendant made to the proposed Class were essentially the same: they falsely represented that the FixCleaner software would accurately detect, report and remedy harmful errors and threats on a user's PC, when in fact, it would not; and, through the software itself, misrepresented the actual health of their computers. (*Id.* ¶¶ 5, 7, 23, 49, 51, 96.) Plaintiffs and each member of the proposed Class viewed and relied upon those representations and were damaged in the form of the fees they paid to Defendant as a result. (*Id.* ¶¶ 6, 7, 36, 39, 74, 86.)

In light of the foregoing, it's clear that Defendant acted on grounds generally applicable to the Class as a whole, making final injunctive relief necessary to protect Plaintiffs and the proposed Class from such conduct in the future, and satisfying the requirements of Rule 23(b)(2).

**F.     The Proposed Class Also Meets the Requirements of Rule 23(b)(3).**

Plaintiffs also seeks class certification under Rule 23(b)(3), which provides that a class action may be maintained where the questions of law and fact common to members of the class predominate over any questions affecting only individual members, and the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *Fletcher v. ZLB Behring LLC*, 245 F.R.D. 328, 331-32 (N.D. Ill. 2006). This case easily meets both of these requirements.

i.     <u>Common Questions of Law and Fact Predominate</u>.

Rule 23(b)(3)'s "predominance requirement looks to whether the proposed class is 'sufficiently cohesive' to warrant 'adjudication' by representation.'" *Williams-Green v. J. Alexander's Restaurants, Inc.*, 277 F.R.D. 374, 383 (N.D. Ill. 2011) (citing *Dukes*, 131 S. Ct. at 2566). This inquiry requires courts to identify "the substantive issues that will control the

outcome, assess[] which issues will predominate, and then determin[e] whether the issues are common to the class." *Id.* (citing *Hyderi v. Wash. Mut. Bank, FA*, 235 F.R.D. 390, 398 (N.D. Ill. 2006)) (internal quotations omitted).

Here, Plaintiffs' and the Class members' claims all arise from Defendant's standardized design, promotion and marketing of the FixCleaner software, which resulted in Defendant charging and collecting fees from Plaintiffs and the Class for the full registered version of the software in precisely the same manner, thereby entitling each of them to a nearly identical calculation of easily ascertainable damages. As such, the common questions at issue in this case—described in Section III.B, *supra*—clearly predominate.

Moreover, the answers to these questions are necessarily subject to common proof, primarily from information within Defendant's own possession and control. *See Dukes*, 131 S. Ct. at 2551 (2011) ("What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."); *Schmidt v. Smith & Wollensky, LLC*, 268 F.R.D. 323, 329 (N.D. Ill. 2010) (Court must determine "whether plaintiffs can, through individualized cases, offer proof on a class-wide basis."). That is, it was Defendant that intentionally designed the software such that it is incapable of performing as advertised, and Defendant that designed its online advertising and marketing materials such that they failed to disclose the software's true functionality. As a result, the information necessary to prove Plaintiffs' and the Class's claims—*e.g.*, internal communications regarding marketing and software design, the software's underlying source code, and software developer notes—will

come from within Defendant's own records.[4]

For all of these reasons, Rule 23(b)(3)'s predominance requirement is easily satisfied as well.

        ii.    <u>The Class Action Mechanism is Superior to Other Available Methods for the Adjudication of this Matter</u>.

Finally, Rule 23(b)(3) requires that the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *Fletcher*, 245 F.R.D. at 334. The instant class action is superior to other available methods for litigating Plaintiffs' and the other Class members' claims. That is, absent class treatment in this case, each individual Class member would be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judicial system and the litigants. Such a result would be neither efficient nor fair to anyone, including Defendant. Moreover, there is no indication that members of the Class have a strong interest in individual litigation, let alone any incentive to pursue their claims individually, given the small amount of damages likely to be recovered relative to the resources required to prosecute such an action. (*See* Compl. ¶¶ 39, 63, 74, 86 (identifying the typical purchase price of FixCleaner as $34.95).) Similarly, class certification would promote consistency of rulings and judgments, giving all parties the benefit of finality.

Accordingly, Rule 23's final requirement—superiority—is satisfied too.

**IV.    CONCLUSION.**

For the foregoing reasons, Plaintiffs James Heneghan and Gregory Perkins, individually

---

[4]     Additionally, records of who actually purchased the software and thus, who falls within the putative Class will also be within Defendant's possession and control.

14

and on behalf of the proposed Class, respectfully requests that the Court (i) enter and reserve ruling on their Motion for Class Certification; (ii) allow for and schedule discovery to take place on classwide issues; (iii) grant them leave to file a supplemental memorandum in support of their Motion for Class Certification upon the conclusion of class-wide discovery; (iv) grant their Motion for Class Certification after full briefing of the issues presented herein; and, (v) provide all other and further relief that the Court deems reasonable and just.[5]

        Respectfully submitted,

        **JAMES HENEGHAN and GREGORY PERKINS**, individually and on behalf of all others similarly situated,

Dated: May 31, 2013        By: /s/ David I. Mindell
        One of Plaintiffs' Attorneys

        RAFEY S. BALABANIAN
        rbalabanian@edelson.com
        BENJAMIN H. RICHMAN
        brichman@edelson.com
        CHANDLER R. GIVENS
        cgivens@edelson.com
        DAVID I. MINDELL
        dmindell@edelson.com
        EDELSON LLC
        350 North LaSalle, Suite 1300
        Chicago, Illinois 60654
        Telephone: (312) 589-6370
        Facsimile: (312) 589-6378

---

[5] Plaintiffs respectfully reserve the right to amend the "Class Definition" at the conclusion of classwide discovery, subject to Court approval.

**CERTIFICATE OF SERVICE**

      I, David I. Mindell, an attorney, hereby certify that on May 31, 2013, I served the above and foregoing ***Plaintiffs' Motion for and Memorandum in Support of Class Certification***, by causing a true and accurate copy of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this 31st day of May 2013.

                                                    /s/ David I. Mindell